Kaminski et ux. *v.* Bradley et al., Appellants.

Argued October 28, 1935.

Before KELLER, P. J., BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Charles C. Lark,* for appellants.

*John L. Pipa, Jr.,* for appellees.

OPINION BY STADTFELD, J., December 18, 1935:

This is an action of trespass brought by John Kaminski and Mary Kaminski against Joseph P. Bradley and Thomas A. Cuff, a partnership, to recover damages alleged to have been sustained by the plaintiffs by reason of an accident which happened to Mary Kaminski on the evening of December 7, 1931, at the intersection of Race and Cherry Streets, in the Borough of Shamokin. The plaintiffs filed their statement, alleging that John Kaminski and Mary Kaminski are husband and wife; that defendants are a co-partnership, doing business under the name of Bradley & Cuff; that on the evening of December 7, 1932, Mary Kaminski sustained injuries at the intersection of Race and Cherry Streets, in the

Borough of Shamokin, through the alleged negligence of defendants' driver, Bill Brennan, in coming in contact with the plaintiff, Mary Kaminski, an elderly woman, aged 62, who was proceeding southwardly from the northern side of Race Street to the southern side, at its intersection with Cherry Street, at a regular crossing used by pedestrians, and when about to step on the curb at the corner of said intersection, she was struck by the defendants' car, without warning, which was proceeding eastwardly going up a hill of rather steep grade, from twenty to twenty-five miles an hour and carried, or driven eastwardly across Cherry Street, which is twenty-four feet wide, to a point about ten feet beyond the crossing, where she was found lying about four or five feet from the south curb line, and, as a result thereof, she received bodily injury. Both plaintiffs claimed damages in their respective capacities as husband and wife. The defendants filed no affidavit of defense.

The case was tried before the court and a jury, on March 14, 1934. The defendants offered no testimony. The court refused a point for binding instructions and submitted the case to the jury, on the question of defendants' negligence and of the contributory negligence of plaintiff wife, who found a verdict of $500 in favor of John Kaminski and $1,000 in favor of Mary Kaminski.

It was contended upon the trial, by the defendants, that the plaintiffs had shown no negligence on the part of defendants' chauffeur, and that the plaintiff, Mary Kaminski, was guilty of contributory negligence.

A motion for judgment for defendants, non obstante veredicto, was overruled by the court in banc, in an opinion by MORGANROTH, P. J. Judgments were entered upon the verdict and thereupon, these appeals were taken to this court.

The only assignments of error are the refusal to give

binding instructions for defendant, and overruling motion for judgment non obstante veredicto.

Mary Kaminski, of plaintiffs, testified that on the night in question, at about 8:00 o'clock, she was coming out of the church and walking up the hill on the left hand side of the street, known as Race Street, and came to the intersection of Cherry Street where she wanted to cross to the other side of Race Street; that she went straight across the street; that she looked up and down on the side of the street, and didn't see any car; that she had about two more steps to make in crossing the street, and then she didn't know what had happened; nobody was with her; she remembers the next day when she awoke in the Shamokin State Hospital.

Ray Gribbins, a witness for plaintiffs, testified that he was at the intersection of Cherry and Race Streets in Shamokin on the night in question; that it was raining and the street was wet; that he knew the defendants' driver, and saw him driving a Chevrolet coupe, which came up the hill eastwardly on Race Street; that Brennan called to him "Hello Ray," and somebody hollered that somebody was hurt and when he turned around Bill hollered "Come along and give me a lift" and he went over and helped the plaintiff, Mrs. Mary Kaminski into the car; that they had to lift her into the car; that she was lying about 5 or 10 feet from the southeast corner; he did not see the accident; that he had been engaged as a driver for four years, and from his experience as an automobile driver, he would say that Bill Brennan, driver of defendants' car, on that night, was going between twenty and twenty-five miles an hour; that Mrs. Kaminksi was picked up at the sewer grating near the corner; her head lay at the right rear wheel and her feet at the rear of the car; the car was about five feet from the south pavement.

Raymond Kanaski, a witness on behalf of plaintiffs, and who was with Ray Gribbins at the corner of Race

and Cherry Streets at the time of the accident, testified that when Bill Brennan bid them the time, he looked towards Brennan, and in a few seconds, heard a thud and heard someone yell a woman was hit; he went to the woman's assistance and found her lying on the street at the rear end of defendants' car at the rear right wheel, about 4 or 5 feet from the curb; she was unconscious; he put her in the car; the car was stopped about 10 feet from the intersection of the two streets; he did not see the accident itself. The witness had driven a car himself for six years and estimated the speed of defendants' car at twenty to twenty-five miles an hour when it passed him.

The verdict establishes the negligence of defendants' driver and the want of contributory negligence on the part of the wife plaintiff.

In determining whether defendants were entitled to binding instructions, or judgment n. o. v., the evidence and inference deducible therefrom, favorable to plaintiff, must be taken as true, and those unfavorable, depending solely on testimony, must be rejected: Magri v. McCurdy, 117 Pa. Superior Ct. 32, 177 A. 349.

In Gilles v. Leas, 282 Pa. 318, 127 A. 774, the Supreme Court, in affirming a judgment in favor of the plaintiff, who had been injured by being struck by an automobile at the northwest corner of Market and 23d Streets, Philadelphia, where plaintiff was crossing Market Street from the northwest to the southwest corner, speaking through Mr. Justice KEPHART, said at p. 321: "There is nothing in the evidence in this case that would warrant the court in holding plaintiff guilty of contributory negligence merely because he tried to cross the street when his pathway was clear. He had an undoubted right to leave his place on the sidewalk when nothing appeared before him, and the traffic signal was not turned against him. His position became perilous only through the unlawful act of defendant,"

In the case of Johnson v. French, 291 Pa. 437, 140 A. 133, the Supreme Court, by Mr. Justice SCHAFFER, at p. 438, held: "We have determined that at crossings all motor drivers must be highly vigilant and maintain such control that, on the shortest possible notice, they can stop their cars so as to prevent danger to pedestrians who have the right to cross the streets at crossings and to rely on the drivers of automobiles not to run them down: Anderson v. Wood, 264 Pa. 98; Mooney v. Kinder, 271 Pa. 485; Eckert v. Merchants Shipbuilding Corp., 280 Pa. 340; Gilles v. Leas, 282 Pa. 318. . . . . . . Care at street crossings is the highest duty of motorists and under plaintiff's proofs defendant did not exercise it. The case is not one to be disposed of as a matter of law."

In Anderson v. Wood, 264 Pa. 98, 107 A. 658, the Supreme Court said: "It was not negligence for Anderson to attempt to cross, and that he did not use due care after leaving the sidewalk was for defendant to establish, unless it appeared from appellee's evidence."

In Mooney v. Kinder, 271 Pa. 485, 115 A. 826, the Supreme Court, through Mr. Justice SCHAFFER said: "What of defendant's negligence? He contends none was proven. He did not take the witness stand to explain how the accident happened, although present in court, and called no witness to vouchsafe an explanation of it. . . . . . . Instead of safeguarding her as he approached the crossing, he ran her down. Obviously if he had been proceeding with due care, the accident would not have happened, because, with his car under such control as it should have been he could have stopped almost instantly. To the end that drivers of motor vehicles may have brought to their attention the rule of law applicable in cases where they approach street crossings, we reiterate what was recently said in Silberstein v. Showell, Fryer & Co., 267 Pa. 298, 305, 'Vehicles have the right of way on the portion of the

highway set aside for them, but at crossings all drivers, particularly of motor vehicles, must be highly vigilant and maintain such control that, on the shortest possible notice, they can stop their car so as to prevent danger to pedestrians ...... the automobile must come to the crossing under control.' Under the facts as shown, and the law applicable to them, the court could not have entered judgment for defendant."

"To run a pedestrian down with an automobile at a crossing where the pedestrian is in plain sight and does not change his course, is evidence of negligence." Robb v. Quaker City Cab Co., 283 Pa. 454, 129 A. 331.

In the case of Reardon v. Smith, 298 Pa. 554, 148 A. 860, the Supreme Court, through Mr. Justice FRAZER, said: "No person apparently saw the actual impact of the car with the body of Reardon. 'It is not essential that there should be an eye-witness of the occurrence. The proof may be furnished by the circumstances themselves. The test is whether they are such as to satisfy reasonable and well-balanced minds that the accident resulted from the negligence of defendant': Ferry v. P. R. T. Co., 232 Pa. 403, 406; Miller v. Siebert, 296 Pa. 400, 406. A witness who saw Reardon on the sidewalk, immediately before the accident, testified: 'I was looking out of the window and I seen a car coming over on the sidewalk, and then the grinding of the brakes and I seen a man lying out in the middle of the street.' He could not say he saw the car strike deceased, because 'It happened so quick.' "

In the instant case, the testimony and reasonable inferences deducible therefrom justify the view that the defendants' driver approached the intersection with his car not under control, traveling from twenty to twenty-five miles per hour, bidding the time of day to two people standing on the corner, rather than looking as he should, in front of him.

The case was properly for the jury, and it would have

been error to have withdrawn it from their consideration.

The assignments of error are overruled and judgment affirmed.